## Case No. 929.

### BANK OF THE UNITED STATES v. MAGILL et al.

[1 Paine, 661.][1]

Circuit Court, D. Connecticut. April Term, 1824.[2]

BANKS AND BANKING—BOND OF CASHIER—LIABILITY OF SURETIES—BANK OF THE UNITED STATES.

1. One gave a bond with sureties to the Bank of the United States, conditioned, that he should faithfully perform the duties of cashier of their office of discount and deposite at Middletown, during the term he should hold said office. The bank at Philadelphia hearing that he had been guilty of a gross breach of trust,—by a resolution passed on the 27th of October, 1820, suspended him from office till the further pleasure of the board, and directed the property of the bank to be taken out of his hands. This resolution was communicated to the cashier and carried into effect on the 30th day of the same month: *Held*, that the suspension did not take effect instanter on the 27th, but on the 30th, when it was made known to the cashier; and, that until then he was cashier within the letter of the bond, and the sureties liable for his acts.

[See note at end of case.]

2. Had the resolution been to remove the cashier from office, it would have taken effect and the sureties been discharged from their liability, from the time of its passage.

3. The resolution was sent by mail, and received by the president of the office at Middletown, on the morning of Sunday the 29th:

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Elijah Paine, Jr., Esq.]
[2] [Affirmed in 12 Wheat. (25 U. S.) 511.]

*Held*, that its not being communicated on that day was not such a want of diligence as would discharge the sureties from their liability for frauds committed by the cashier on that day.

[See note at end of case.]

4. Where a bond with a penalty is given for the performance of covenants, although damages may have been sustained to a greater amount, yet the recovery must be limited to the penalty,—especially in a case of sureties. Contrariety of English authorities on this point.

5. It seems, that this is not the rule where bonds are conditioned for the payment of money.

[Cited in Lawrence v. U. S., Case No. 8,145.]

6. If there has not been a previous demand of the penalty or an acknowledgment that the whole is due, interest is recoverable only from the commencement of the suit.

[See U. S. v. Curtis, 100 U. S. 119.]

At law. This was an action of debt [by the president, directors, and company of the Bank of the United States] on a bond in the penalty of 50,000 dollars, made by Arthur W. Magill, Joshua Stow, Elisha Coe, and Nathan Starr, jun., the defendants, to the plaintiffs, conditioned, that said Magill should, during the term he should hold the office of cashier of the office of discount and deposite of the Bank of the United States at Middletown, Connecticut, execute the duties thereof with integrity and fidelity, and well and faithfully perform and fulfil the trusts reposed in him. The bond was dated the 27th of August, 1819. To the declaration on the bond the defendants pleaded performance; and the plaintiffs replied, assigning breaches.

At the trial the jury found a special verdict, stating circumstantially the following facts: That Magill, between the date of the bond and the 30th day of October, 1820, and while he was cashier of the office at Middletown, fraudulently, corruptly, and unfaithfully permitted overdrawings on the bank, and was guilty of other misconduct, by means of which the bank sustained losses to the amount, with interest, of 7,933 dollars 46 cents. That after the date of the bond, and before the 30th day of said October, 1820, and while he was such cashier, he embezzled monies and funds of the bank amounting, with interest, from the 29th day of October, 1820, to the sum of 58,614 dollars 94 cents: That 23,366 dollars 10 cents principal and interest was to be deducted from the amount of these losses. on account of monies paid by the defendants Starr and Coe, leaving a balance of 43,182 dollars 50 cents damages sustained by the plaintiffs. The verdict also found the amount of the penalty of the bond, with interest, and without interest, after deducting the said payments, in case the court should be of opinion that the plaintiffs were not entitled to recover more. The verdict also found that the president and directors of the Bank of the United States, on the 27th day of October, 1820, at Philadelphia, passed the following resolutions, viz.:

"Whereas it appears, by a report of a committee of the directors of the office of discount and deposite at Middletown, that Arthur W. Magill, cashier of that office, has been guilty of a gross breach of trust, in knowingly suffering overdrafts to be made by individuals, and also making overdrafts himself—Therefore resolved, that Arthur W. Magill, cashier of the office at Middletown, be, and he is hereby suspended from office, till the further pleasure of this board be made known." "On motion resolved, that the president of the office at Middletown be authorized and requested to receive into his care, from A. W. Magill, the cashier, the cash, bills discounted, books, papers, and other property in the said office, and to take such measures for having the duties of the cashier thereof temporarily discharged as he may deem expedient."

Which resolutions were immediately transmitted by mail from Philadelphia to the president of the office at Middletown, who received them on the morning of Sunday the 29th day of said October, and on the 30th, between the hours of four and five in the afternoon, communicated them to Magill, and then and there received into his own care the cash, bills discounted, books, papers, and other property in said office: That Magill, on the 2d day of November, 1820, sent to the president of the bank at Philadelphia a letter containing his resignation, and on the 7th the president and directors of the said bank unanimously dismissed him from his office.

D. Daggett and S. P. Staples, for plaintiffs.

R. M. Sherman and N. Smith, for defendants.

THOMPSON, Circuit Justice. This action is founded upon a bond in the penalty of fifty thousand dollars, given to the Bank of the United States for the faithful performance of the duties of cashier of the branch at Middletown in Connecticut, by Arthur W. Magill. The bond bears date the 27th day of August, in the year 1817, with a condition in the following words: "Whereas the above Arthur W. Magill has been duly appointed cashier of the office of discount and deposite of the said Bank of the United States at Middletown, Connecticut: Now the condition of this obligation is such, that if the said Arthur W. Magill, for and during the term he shall hold the said office of cashier of the said office of discount and deposite, shall execute the duties thereof with integrity and fidelity, and well and faithfully perform and fulfil the trusts thereby in him reposed, then this obligation to be void; otherwise to be and remain in full force and virtue." The case now comes before the court upon a special verdict by which the jury have found negligent, fraudulent, and unfaithful conduct in the cashier, in a variety of instances, which are particularly enumerated and set forth;

by which the bank has sustained losses to an amount beyond the penalty of the bond. It is unnecessary for me to notice particularly the several specifications embraced by the verdict. The defendant's counsel upon the argument confined themselves principally to the embezzlement of the fifty-one thousand and eighty dollars sixty-four cents. I would, however, observe generally, that I entertain no doubt, that the losses found by the jury to have been sustained by the bank in the various other instances found by the verdict, are covered by the bond. They are all found to have been sustained by the fraudulent, corrupt, and unfaithful conduct of Magill, during the time he was cashier of the bank, and are therefore not only within the general scope and object of the bond, but within its express provisions.

The questions requiring examination in the case, may be embraced under the following heads. 1. Can the defendants, under the circumstances found by the special verdict, be made responsible for any part of the fifty-one thousand and eighty dollars sixty-four cents? And 2d. As to the extent of the recovery, that is, whether it can be beyond the penalty of the bond.

The precise time when this money was embezzled by the cashier is not found by the special verdict. It states it to have been after the date of the bond and before the 30th day of October, in the year 1820, while he, (Magill,) was cashier as aforesaid. It was suggested on the argument, that this finding had reference to the particular situation in which the cashier was placed by the proceedings of the directors of the mother bank in Philadelphia. But this conclusion is not warranted. It is the same language that is used in the finding as to every other default, and was manifestly intended to refer to the introductory part' of the verdict, which describes him as cashier of the office of discount and deposite of the Bank of the United States at Middletown. The verdict, therefore, finds the embezzlement to have been committed by Magill while he was cashier, and before the 30th day of October, 1820; that being the day on which he was notified of his suspension. The jury have therefore found, that he continued cashier up to the 30th of October. If, however, this is a conclusion of law not warranted by the facts found by the special verdict, it must be rejected as not coming within the province of the jury. If the special verdict is defective as to the precise time of this embezzlement, and if it was material, and the evidence upon the trial would justify a finding, that it was previous to the 27th of October, a venire facias de novo might be awarded, and the verdict in this respect corrected. This, however, not having been asked for on the part of the plaintiffs, the defendants are entitled to all the benefit of the presumption, that the embezzlement might have been between the 27th and 30th of October; and this brings me to the consideration of the proceedings of the directors of the mother bank, in relation to Magill, and the legal effect of those proceedings upon the responsibility of the sureties. The special verdict finds, that the directors of the Bank of the United States, on the 27th day of October, 1820, at Philadelphia, passed the following resolution, (after reciting some misconduct of the cashier:) "Resolved, that Arthur W. Magill, cashier of the office at Middletown, be, and he is hereby suspended from office till the further pleasure of this board be made known;" and the president of the office at Middletown, was by another resolution, authorized and requested to receive from Magill, the cash, books, papers, and other property of the office, and to take such measures for having the duties of cashier temporarily discharged as he should deem expedient. These resolutions were sent by mail to the president, and received at Middletown on the morning of the 29th of October, (being Sunday,) and on the next day between four and five o'clock in the afternoon made known to Magill, and the books, papers, and property of the bank taken out of his possession.

The bond was given to secure the faithful discharge of the trusts reposed in Magill, for and during the term he should hold the said office of cashier; and the question is, when did that office and trust cease, within the true intent and meaning of the bond? Or when did the suspension take effect; whether on the 27th of October when the resolution was passed, or on the 30th when it was made known to Magill? The jury having found that the embezzlement was before the 30th, any neglect on the part of the president in not carrying into effect the resolution of suspension, until the afternoon of that day, may be laid out of view. And I cannot think, that not having done it on Sunday is to be imputed to the president, as that want of due diligence which ought on this ground to exonerate the sureties. If then, there has been no negligence which can affect the question, the single inquiry is, whether the sureties are responsible for any act of Magill's after the 27th of October. And notwithstanding the circumspection with which the law guards and protects the rights of sureties, from the best consideration I have been able to give to the question, I think the liability of the sureties did not cease instanter upon passing the resolution of suspension: But that a reasonable time must be allowed for the resolution to be made known and carried into effect. It was undoubtedly within the power of the directors of the mother bank so to have modified the resolution by express terms, as to have it take effect upon due notice thereof being given; and such is by implication the reasonable intendment of the law. The appointment and removal of the officers in the branches being under the au-

thority and control of the mother bank in Philadelphia, time must necessarily be allowed for communicating such determination.

This was not a removal from office; Magill was still cashier, and so within the letter of the bond. Had he given satisfactory explanations respecting the complaints made against him, so that the directors had seen fit to continue him in office, no new appointment would have been necessary, and upon his restoration the liability of the sureties would unquestionably have attached without any new bond. The expression in the bond "during the term he shall hold the said office of cashier," must be construed to mean, so long as he shall have authority to act by virtue of his office. And Magill clearly had authority to act, until he received notice of his suspension; and the bank would until such time have been bound by his official acts. And if so bound, it must be because he was an officer of the bank, and having authority to bind it; which brings the case within the spirit and intention, as well as within the letter of the bond. The liability of the sureties must according to every reasonable intendment be co-extensive in point of time with the authority of the cashier to act, unless the plaintiffs or their agent are chargeable with want of due diligence in giving notice of the suspension and taking the affairs of the bank out of his hands, which in the present case I think they are not. So long as Magill was clothed with the official character of cashier, and legally left in trust with the property and concerns of the bank, and in a situation to enable him to do the mischief, against which the bond was intended as an indemnity, the responsibility of the sureties ought to remain. Had he been removed instead of being suspended he would not have had the official character of cashier, and a new appointment would have been necessary to give him such character, and a different rule of construction might perhaps have applied to the liability of the sureties. Whenever the cashier was so suspended, or placed in a situation that he could perform no official act binding on the bank, the responsibility of the sureties must also have ceased. But whilst the trust existed and was legally exercised, the sureties were bound to guarantee its faithful execution. I am accordingly of opinion that the bond covers the time up to the 30th of October, previous to which by the finding of the jury the embezzlement took place.

The next inquiry is, whether the recovery can extend beyond the penalty in the bond. On an examination of the English authorities upon this point, some contrariety of opinion will be found. Before the statute 8 & 9 Wm. III., it was held that the penalty of the bond was the debt, and payment of it might be pleaded in bar of the demand. And in many cases since the stat-

ute, satisfaction has been ordered to be entered of record on payment of the penalty of the bond and the costs. This practice, however, was not sanctioned by the court, in the case of Lord Lonsdale v. Church, 2 Term R. 388. And the court refused to stay the proceedings on the payment of the penalty into court. But in a later case of Wilde v. Clarkson, 6 Term R. 303, Lord Kenyon expressly lays it down, that the recovery cannot be beyond the penalty, and disapproves of the doctrine in the case of Lord Lonsdale v. Church. I am inclined to adopt as the better opinion, that where a bond with a penalty is given for the performance of covenants, although damages may have been sustained to a greater amount, yet the recovery must be limited to the penalty. That becomes the debt due, and upon which interest according to circumstances may be added. I the more readily adopt this rule in the present instance, because it is a case of sureties. In such cases it is peculiarly fit and proper that they should not be made liable for damages beyond the penalty. If the responsibility was without limitation, prudent and discreet men would be unwilling to become security, and expose themselves to such hazard. No judgment could be formed as to the extent of the risk; nor any calculation made as to the indemnity or counter security necessary for their protection.

I do not mean to be understood as extending this rule to bonds where the condition is for the payment of money only. Such cases might probably require the application of a different rule, and depend on different principles. Considering then the penalty as the debt due, the only remaining question is, whether interest is recoverable, and if so, from what time the calculation is to be made. The general principles of law will, I think, sanction the allowance of interest from the commencement of the suit, but no farther. Had there been any previous demand of the penalty, or any acknowledgment that the whole was due, interest might be recoverable from such time. But that not having been done, the defendants may not be deemed in default until the commencement of the suit. It may be considered somewhat analogous to an obligation to pay a certain sum of money on demand; in which case interest accrues only from the commencement of the suit, when no actual demand is shown. I am accordingly of opinion that judgment be entered for the penalty of the bond, deducting the payments proved to have been made, together with interest on the balance from the commencement of the suit. I reject the interest on the payments. Such payments were an admission of a breach of the condition of the bond, and damages sustained to that amount at least, and were of course made towards satisfaction of a demand admitted to be due. Judgment must accordingly be entered upon the special ver-

dict, for such sums as shall, upon calculation, be found due upon the principles laid down in this opinion.

[NOTE. This judgment was affirmed by the supreme court in M'Gill v. Bank of U. S., 12 Wheat. (25 U. S.) 511. Mr Justice Johnson, in delivering the opinion, said: "We are unanimously and decidedly of opinion that the ground assumed by the defendants below cannot be maintained. What was there in the resolutions of the parent bank to discharge the obligors at all from their liability? The resolution was only to suspend, and this implies the right to restore. The cashier's salary went on; and, had the board rescinded their resolution, what necessity would there have existed for a redelivery of his bond? But there is no necessity for placing the decision on this ground, since, notwithstanding the resolution of the board is expressed in the present tense, a future operation must necessarily be given it, from a cause that could not be overcome,—the distance of the parties from each other. Time became indispensable to giving notice, and the day on which the communication reached the president of the Middletown bank was a day not to be profaned by the business of a bank. There was, then, no obligation to deliver the notice, and dispossess the cashier, until the 30th, and the law makes no fractions of a day."]